## Huber *versus* Wilson.

1. In an action on the case for deceit it was not error in the Court in charging the jury to omit a distinction which did not affect *the right of action*, but which at most affected only the amount of damages, and to which the attention of the Court was not directed by the party complaining of the instruction.

2. To entitle a party to recover in an action for false representations made to his injury, the representations should be both false and fraudulent; must be false in fact, and the party making them must have known that they were so; and the credit by the plaintiff should have been induced by the representations.

3. In such an action the plaintiff may show that the real estate of the person with whom he contracted has been sold at sheriff's sale, and that his claim for the property delivered was not paid out of the proceeds.

ERROR to the District Court, *Philadelphia.*

This was an action on the case, by David C. Wilson *against* James S. Huber, for deceit in relation to the character and circumstances of one Richardson. The plaintiff resided in Wilmington, Delaware, and being engaged in the business of brickmaking, was called upon, on or about the 22d of October, 1850, by Richardson, who resided in Philadelphia, for the purpose of procuring bricks for certain houses he was erecting. Richardson stated that he wished to buy 300,000 bricks, and stated the kinds of brick he wanted. The plaintiff, to whom he was a stranger, desired a reference as to him, and Richardson referred to the defendant, who resided in Philadelphia. The plaintiff caused a letter to be addressed to the defendant, which was mailed on the night of the 22d, and about two days afterwards, viz., on 24th October, 1850, the defendant addressed the plaintiff, stating, "I sold Mr. Richardson the ground on which he is now building. I was perfectly satisfied, or should not have done so; I have always found him a man of truth, and, personally, have no doubt of his ability to carry out his engagements. I would sell him myself had I any materials for sale."

Richardson was to pay half in cash, and the balance in about sixty days, or shortly after the delivery of the bricks.

The delivery of the bricks was commenced on 24th October, 1850, and ended on 22d November following.—Total, 300,000, at $6. It rather appeared from the evidence that the *first of the bricks* were delivered at the wharf before the receipt of Huber's answer. The delivery proceeded from the 24th October till 22d of November, 1850.

Richardson had purchased, on ground-rent, from H. Stiles, acting through Huber, as his agent, eighteen lots on Front street,

[Huber v. Wilson.]

in the county of Philadelphia. Richardson's object was to build on the lots, and he desired $9000 to be advanced on the property. Huber informed him that Stiles was willing to advance but $350 on each lot. Richardson had not ability to erect the proposed buildings, and he informed Huber that he could not get along with that amount of money. Huber told him that if he took up the lots, Stiles would let him have two or three thousand dollars more, if he wanted it; but, if Stiles would not advance him that amount, that he (Huber) would loan him that amount. Richardson then agreed to take the 18 lots. Huber requested him to refer to him when he wanted to purchase materials for the buildings.

The agreement between Richardson and Stiles was dated on 18th July, 1850, and the deeds were executed on 18th September following, for nine of the lots; and, on 10th October, for the other nine. On the 11th October, 1850, another agreement similar to the first was executed by the same parties. The lots were to be subject to ground-rent as before stated.

Whilst Richardson was building the houses, for which he purchased the bricks, he borrowed from Huber $300, for which he gave his bond, dated November 5th, 1850, on which judgment was entered on 10th January, 1851. The buildings were stopped before completion, and they were levied on by proceeding under the said judgment of Huber, and were sold by the sheriff, in May, 1851.

During the trial, the plaintiff's counsel offered in evidence the record of the said judgment entered to December Term, 1850, in order to show that an attachment was issued on the judgment entered on the bond of Richardson to Huber—that the money *was paid* and the attachment discontinued; and that afterwards Huber proceeded on the judgment, and had the property sold. It was stated that one object of the offer was to show that the property yielded but little *to the plaintiff* in this suit. The evidence was admitted for that purpose.

SHARSWOOD, J., charged the jury, *inter alia,* that the gist of the action was a false and fraudulent representation by the defendant, by which the plaintiff was injured. "In order to recover, the representation must be both false and fraudulent—must be false in fact, and the party making it must have known that it was so, and it must appear in addition that the credit by the defendant was induced by the representation. As to the falsity, it may be by the positive statement of a falsehood, or by the suppression of material facts which the other party ought to know. It is not necessary that there should be collusion between the defendant and the person recommended—nor that either intended to defraud the party inquiring. It is sufficient if such has been the effect of the representation. Representations of such a character are fre-

[Huber *v.* Wilson.]

quently made from inconsiderateness, without a design of advancing the interest of the party making them.   *The motives* of such party are not to be considered, if he made representations productive of loss to another, knowing the representations to be false; or if he has suppressed material facts within his knowledge, he is responsible as for a fraudulent deceit.   The question for the jury is one of *good faith*, and if they believe that the defendant *believed* his own statement, they should find in his favor.   Suppression of circumstances is evidence of insincerity, though not conclusive.   On the other hand, if the defendant asserted a fact which he knew, but did not *believe*, though not asserted to injure the plaintiff, but in order to oblige the buyer or some other person, he is guilty of falsehood, and must bear the consequences."

He also observed that if the defendant, after the representations in question, made false representations to others, these should not affect the result of the case—that they were material only as showing a purpose to deceive at the time he made the representations in question.

He further charged,—3. That if *the contract* between the plaintiff and Richardson was made without any reference to these representations, and was fully complete before the receipt of Huber's letter, the plaintiff's action failed.   But if the reference to the defendant was given, and the plaintiff began to furnish the bricks, upon the confidence that the reference to the defendant would be satisfactory, and proceeded to complete the contract, he had the right to recover.

February 24th, 1853, verdict for plaintiff for $2093.91.

Error was assigned to the reception in evidence of the record of the judgment of Huber *v.* Richardson.   2. In charging " that if defendant's motive was to get the houses built, it was the same as if he meant to defraud plaintiff," and in saying that his motive was not material.   3. In instructing the jury that if a reference was asked and Huber named, and though before the receipt of Huber's letter the plaintiff began to send the bricks, in the confidence that the answer would be satisfactory, the plaintiff could maintain the action.   4. That the judge erred in submitting the case to the jury, there being no evidence to sustain the *narr.*

*Campbell*, for plaintiff in error.—The evidence of the record was immaterial.   It was for the *defendant* to prove in reduction of damages that the property yielded the *plaintiff something*, and not for the latter to prove that it yielded him nothing.   2. The defendant's motive was material.   3. Representations which the plaintiff had confidence would be sent to him were not equivalent to those which he received; and the judge did not distinguish between property parted with by the plaintiff *before* and that which he parted with *after* the receipt of Huber's letter.   4. To enable

[Huber v. Wilson.]

the plaintiff to recover he should have proved that, in order to deceive, the defendant suppressed a material truth; or, 2. That he asserted a falsehood, and of which he neither knew nor believed anything.   3. If the defendant believed his own statement, the action would not lie against him.   Reference was made to 2 *Harris* 142, Bokee *v*. Walker; 13 *Howard* 198.

*Kneass* and *Juvenal*, contrà.—In support of the action reference was made to 6 *Barr* 316; 3 *Term Rep.* 51; 6 *Bing.* 369; 7 *Id.* 105; 7 *Wend.* 9; 2 *Harris* 142.

3. If no letter from Huber had been received, or if it had proved unsatisfactory, the sale might have been treated as a nullity and suit been brought immediately: 15 *Mass.* 75; 17 *Id.* 133; 15 *Id.* 156; 13 *Johnson* 454.

As to the 4th assignment, it was alleged that Huber intended to induce the plaintiff to believe that Richardson was the owner of the ground unencumbered of any rent-charge.   Besides, Huber had not sold the ground to Richardson for himself, but as agent of Stiles.   Though he wrote that he had no doubt of the ability of Richardson to carry out his engagements, he had been previously informed by Richardson that he could not complete the buildings with only $350 on each lot which Stiles was to advance, and he agreed to contract on Huber's assurance that if he wanted more money, Stiles would advance two or three thousand dollars, or else he would lend him that amount.   That allegation of Richardson was not communicated to the plaintiff before the bricks were furnished.

The opinion of the Court was delivered by

WOODWARD, J.—The charge contains an accurate exposition of the law of this action, and was quite as favorable to the defendant as he had any reason to expect.

As to the complaint that the judge did not distinguish between property parted with by the plaintiff *before*, and that which he parted with *after* the receipt of Huber's letter, it is proper to observe that such a distinction did not go to the right of action, but to the measure of damages; and if the defendant meant it should be taken, he should have called the attention of the Court to it.   It was not error in the Court to omit a distinction which at most could only have affected the amount of damages, and which the party entitled to it did not think proper to claim.

There is no bill of exception to evidence in our paper-books, but if one was sealed on the admission of the evidence tending to show that the plaintiff got but a small part of his claim out of a sale of Richardson's property, we see no error in such evidence, especially when its effect was controlled by the charge, in the manner it appears to have been here.

The judgment is affirmed.