## James F. White & Co. *v.* David Rosenthal, Appellant.

*Deceit—Pleading—Statement.*

In an action of deceit plaintiff's statement shows a good cause of action where it avers that defendant, desiring to make a purchase of goods on credit submitted to plaintiffs an inventory taken the previous year showing large assets, and stated that he was indebted only to about one fifth the amount of his assets, that there were no judgment notes against him; that he was not liable as surety or guarantor, and that he knew of no claim that would affect his financial standing. That upon faith of these representations defendant obtained from plaintiff goods on credit; that said representations were false, and known to be so by defendant, and were made with intent to cheat and defraud plaintiffs of their goods, in which defendant was successful.

*Deceit—Fraud—Evidence.*

In an action of deceit it appeared that defendant made a written statement to plaintiffs showing that his liabilities amounted to only about $7,500. About a year afterwards, seeking to obtain more goods on credit he stated to plaintiffs that his financial position was, if anything, better than the year before. He accordingly obtained the goods. The written statement was substantially correct as of the time it was made, but afterwards defendant greatly enlarged his business with no increase of capital. From his own testimony it appeared that he had gone to New York where plaintiffs did business with the avowed purpose of purchasing $60,000 worth of goods on a credit of from thirty to ninety days, and that on the very day of his interview with plaintiffs he had bought a large portion of this amount. *Held*, that the evidence was sufficient to sustain a judgment on a verdict for plaintiff.

In the above case it was not error to admit evidence of debts created by purchases of goods after the day when the misrepresentations were made to plaintiffs by defendant inasmuch, as all of the transactions taken to-

gether indicated a scheme conceived by defendant before he committed the fraud on plaintiffs to obtain large quantities of goods on credit from plaintiffs and others by false representations, and then to commit an act of bankruptcy which would result in the sale of the goods at a sacrifice and eventually put them in his wife's name.

Submitted Nov. 8, 1895.   Appeal, No. 199, Oct. T., 1895, by defendant, from judgment of C. P. No. 3, Allegheny County, May T., 1894, No. 464, on verdict for plaintiffs.   Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Trespass for deceit.   Before McClung, J.

The pleadings and facts appear by the opinion of the Supreme Court.

At the trial plaintiff offered in evidence the depositions of Bryce Gray and George A. Townley, taken on commission and filed in this case.

To this offer, defendant objected as incompetent and irrelevant and not tending to sustain the allegation of deceit set forth in the statement.

Objection overruled, and at the request of counsel for defendant exception noted and bill sealed.   Counsel has pointed out to me the grounds of the objection and I think the matters referred to are competent evidence. [1]

Under this offer, Geo. A. Townley testified as follows: " When the defendant called on or about August 9, 1892, and made the purchase aforesaid, he told the witness that, although times had been bad, they were looking brighter, and that he, defendant, expected to do good business."   And Bryce Gray testified that the defendant stated on or about August 9, 1892, to him, that his financial condition had not changed for the worse since the day he made his written statement in writing, "Exhibit A," but rather had improved.   By the plaintiff's statement it was averred that on August 9, 1892, defendant made false and fraudulent representations to the plaintiff, to wit: That he had taken stock in the year 1891, and had on hand, in his store at Pittsburg, $18,675 worth of goods at New York cost, that he had cash on hand and in bank, $2,350; that he had good book accounts outstanding to the value of $12,350.75; that he owned real estate, unincumbered, in the

city of Pittsburg, county of Allegheny, worth $4,360; that he only owed for merchandise on open account, bills payable and borrowed money, the sum of $7,525; that there were no judgments against him; that he owed no debts for borrowed money to any one; and was under no liabilities as surety or guarantor for any one; and was not liable in any manner on accommodation paper, and knew of no claim against him that would affect his standing and financial condition in the foregoing statement.

Mr. Blakeley: We first offer Weinburg Cloak Company v. D. Rosenthal, 201 December term, 1892. The action is brought September 29, 1892, an action on a book account, $146.75; contract, June 23, 1892; $1,278.38, August 6, 1892; $225, August 8, 1892. No judgment rendered in this one, but on the 5th of December, 1892, this suit settled and discontinued. Signed Cohen & Co., for plaintiff.

Mr. Ferguson: We object to this particular offer, for the reason that it shows an indebtedness created apparently in due course of trade at or about the date at which the alleged fraudulent representation was made, and therefore does not tend to show the representation was untrue.

The Court: Objection overruled. At the request of counsel for defendant, exception noted and bill sealed. [2]

Mr. Blakeley: I offer the record and papers at 353 December term, 1892, J. S. Ellfutz & Co. v. D. Rosenthal, action brought October 15, 1892, on several items, two of which amounted to $94.00, of July 14, 1892; in which case judgment was taken in the sum of $766 on the 28th of December, 1892.

Mr. Ferguson: Objected to as incompetent and irrelevant, particularly as $691 of it was not purchased until the 12th or 16th of September.

The Court: Objection overruled. At the request of counsel for defendant, exception noted and bill sealed. It is only offered as to that which was purchased before. [3]

Mr. Blakeley: I offer the record and papers at No. 502 of December term, 1892, case of Roth & Friedmand v. D. Rosenthal, the action brought November 5, 1892, on book account, the item dated June 2, 1892, $14.00; judgment entered for the whole amount in default of an appearance on December 3, 1892. The amount of the judgment is $1,103.09. I offer the whole judgment. A second charge was $1,082.

Mr. Ferguson: We object generally to the judgments as incompetent and irrelevant, and specifically to any portion of the judgment based upon a debt contracted after the 9th of August, 1892, the date of the alleged false representation, as incompetent and irrelevant.

The Court: It appearing that the defendant became insolvent at the latter end of September, 1892, and it appearing, inferentially, at least, that all his stock then on hand was absorbed in paying the indebtedness incurred by him after his return from New York, or incurred largely after his return from New York, we think that purchases of goods made before or about the time of these representations made will have some bearing in determining what his real financial condition was at that time, and hence will enable the jury to determine whether or not his statement sworn to as having been made on the 9th of August, 1892, if made, was true or false. The objection is overruled. At the request of counsel for defendant exception noted and bill sealed. [4]

Verdict and judgment for plaintiffs for $547.51. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions.

*J. T. Buchanan,* and *J. S. & E. G. Ferguson,* for appellant. —To take the worst possible view for the appellant, it might be that he had conceived a plan to defraud creditors by making large purchases, and having himself sold out by the sheriff, but it by no means follows that if such was his purpose the representations that he is alleged to have made in August, 1892, were untrue, nor did any of the evidence tend to show such purpose, or tend to sustain the allegation that the representations of August, 1892, were untrue.

*A. Blakeley, A. M. Blakeley* and *W. A. Blakeley,* for appellees. —Fraud must be determined by the jury on the weight of evidence: Kinzer v. Mitchell, 8 Pa. 64; Hollinshead v. Allen, 17 Pa. 275; Young v. Edwards, 72 Pa. 257; 1 Bigelow on Fraud, 1466; Jordon v. Osgood, 100 Mass. 457; Stockwell v. Silloway, 113 Mass. 384.

Evidence which throws light on the alleged fraud is admissible: Covanhovan v. Hart, 21 Pa. 495; Zerbe v. Miller, 16 Pa. 488; Kaine v. Weigley, 22 Pa. 179; Heath v. Page, 63 Pa. 108; Craig's App., 77 Pa. 448; Stewart v. Fenner, 81 Pa. 177.

OPINION BY MR. JUSTICE DEAN, January 6, 1896:

The plaintiffs' action was for deceit. The statement avers that plaintiffs were wholesale dealers in dry goods in New York city and defendant was a retail dealer in same goods in Pittsburg; that on 9th of August, 1892, defendant called upon plaintiffs to make a purchase of goods on credit, and represented that he had taken inventory the previous year of his assets and liabilities and his financial condition was as follows:

| | |
|---|---:|
| Stock on hand in his Pittsburg store, | $18,675.00 |
| Cash on hand, | 2,350.00 |
| Good book accounts, | 12,350.75 |
| Unincumbered real estate, | 4,360.00 |
| Total assets, | $37,735.75 |

That he was indebted on open account, bills payable and borrowed money in the amount of $7,525. He further stated, there were no judgment notes against him, and that he was not liable as surety, guarantor or accommodation drawer, and that he knew of no claim that would affect his financial standing. That on the faith of these representations defendant obtained from plaintiffs $1,000 worth of goods on credit; that said representations were false and known to be so by defendant and were made with intent to cheat and defraud plaintiffs of their goods, in which he was successful, and plaintiffs claimed damages in the amount of $1000.

This statement clearly avers a good cause of action. The evidence to sustain and in denial of it was very contradictory; the material point in dispute being, whether defendant had made the false statement on 9th of August, 1892, when this particular bill was purchased. Prior to September, 1891, defendant had made a written statement to plaintiffs in exact accord with that set out in the declaration of claim. Bryce Gray, a partner in the plaintiff firm testifies, that on the 9th of August, 1892, when

the last purchase was made, he called defendant into his private room, where in answer to his questions he positively stated his financial condition was if anything better than the year before, when he made the written statement. Rosenthal, the defendant, positively denies this, and asserts Gray asked him nothing about his financial condition at that time and he made no statement concerning it. The written statement seems to have been substantially correct as of the time it was made, but afterwards defendant greatly enlarged his business with no increase of capital, so that his purchases of goods were principally on credit; he admits that they amounted to about $65,000, all on credit, at this last visit to New York. His own evidence shows that his financial condition had greatly changed in the year between the written statement and the last purchase. Assume as argued that his actual indebtedness had not greatly increased before his last visit to New York, nevertheless, he went there with the avowed purpose of purchasing $60,000 worth of goods on a credit from thirty to ninety days, and on the very day of the interview with Gray had bought a large portion of this amount; his actual indebtedness was then not less than $30,000, which he intended should be $60,000 before he left, and his intention was carried out. If he under such circumstances represented to Gray his financial condition was, if anything, better than the year before, it was a gross falsehood, for instead of owing $7,500, he owed, or as he knew in a day or two would owe, ten times that amount; true, his assets would be increased by the value of the stock on hand, but this value was wholly problematical, depending on success in the venture of largely increased business with no corresponding increase of capital.

In view of the evidence and its contradictory character, the court fully and fairly submitted it to the jury to inquire, 1. Was a representation made to induce the credit?  2. Was it knowingly false ? . 3. Did plaintiffs rely on it?  On the answers to these interrogatories turned the verdict; the jury found for plaintiff on each.  They may have erred, but clearly the court did not.

The assignment of error to the admission of evidence of debts created by purchases of goods after the 9th of August would be well made, considered apart from its connection with other evidence tending to establish the deceit. The plaintiffs had

shown purchases made on credit in June and July, these followed by showing continued purchases down to September aggregating nearly $90,000 on credit, then insolvency resulting in a sale of the entire stock for less than $20,000, and the store eventually put in name of defendant's wife. Plaintiffs claimed that all of the transactions taken together indicated a scheme conceived by defendant to obtain large quantities of goods on credit from plaintiffs and others by false representations, and then in an indirect way profit by a bankruptcy. In this view the evidence was admissible, not as tending to establish that indebtedness was created by the subsequent purchases, but that these purchases constituted part of one scheme to defraud, conceived by him before he practiced it on plaintiffs to their injury.

We see nothing in the assignments of error which calls for further notice and the judgment is accordingly affirmed.