## Savarese v. Davis

64

*Donald L. LaBarre*, for plaintiff.
*Edward H. McGee*, for defendants.

SCHEIRER, J., October 27, 1964.—Defendants' preliminary objections to plaintiff's complaint in the above captioned action, June term, 1964, no. 279, lying in assumpsit and to plaintiff's complaint in June term, 1964, no. 280, lying in trespass will be considered together since both cases involve the same facts.

On May 15, 1958, plaintiff, with her husband, entered into an agreement of sale for the purchase of lots nos. 754, 756, 758, 760, 762 and 764 West Emaus Avenue, Allentown, Pa., at a price of $3,500. The agreement contained provisions that "The premises are to be conveyed clear of encumbrance . . ." and "The title is good and marketable and such as will be insured in any reputable title company." The premises were conveyed to plaintiff by deed dated June 12, 1958.

Sometime prior to May 15, 1958, a newspaper advertisement appeared over the name of a realtor offering for sale unspecified "lots on [the] south side" and further stating, "good locations, water and sewerage." It was ascertained by plaintiff that the advertisement referred to the lots in question.

On January 17, 1957, the City of Allentown gave notice to the husband defendant of its intention to

install a sewer line along the lots owned by defendants. Construction of the line was completed, not to be confused with a date in a certificate of completion, on or about August 2, 1957. On November 25, 1959, the Bureau of Law of the City of Allentown notified plaintiff by mail of claims totaling $999.61 for the laying of the sewer line. On May 1, 1963, plaintiff paid the city $1,040.36 in satisfaction of the claims.

In the assumpsit action, the claim of plaintiff for the amount paid to the city is based in the first count upon the covenant in the agreement of sale that the premises were to be conveyed clear of encumbrance and upon the general warranty in the deed. The second count is based on the provision in the agreement of sale as to a good and marketable title.

These counts assume that a known encumbrance was a claim or a lien upon the premises.

The basis of the claim in trespass is stated in paragraphs 8 and 9 of the complaint as follows:

"8. In order to induce the Plaintiff to purchase the premises hereinbefore described, at the price set forth in the agreement of sale aforesaid, and with intent to deceive, defraud and injure the Plaintiff, the Defendants represented the premises as having sewerage, and fraudulently failed to reveal that the installation costs of the sewer line had not been paid.

"9. The Defendants, knowing the premises were subject to an assessment for the installation of a sewer line, induced the Plaintiff to purchase the premises in question by representing the premises had sewer lines and by remaining silent and failing to reveal the right of the City of Allentown to file a lien with the intention to deceive, defraud and injure the Plaintiff."

Defendants' preliminary objections in both actions include a demurrer, a plea of the statute of limitations, and a claim that certain paragraphs in the complaints are impertinent or scandalous. An additional objection

in the trespass case is that that cause of action is the same as stated in assumpsit.

It is our opinion that plaintiff's right of recovery in the assumpsit action depends upon the applicability of an act of assembly governing the filing of claims by municipalities, at least one provision of which was intended as a solution to troublesome conflicts between vendors and vendees on their respective responsibilities for municipal improvements.

The relevant portion of section 9 of the Act of May 16, 1923, P. L. 207, as amended, provides:

". . . other municipal claims must be filed in said Court [of Common Pleas] or the Municipal Court of Philadelphia within six months from the time the work was done in front of the particular property, where the charge against the property is assessed or made at the time the work is authorized; within six months after the completion of the improvement, where the assessment is made by the municipality upon all the properties after the completion of the improvement; and within six months after confirmation by the court, where confirmation is required; the certificate of the surveyor, engineer or other officer supervising the improvement, filed in the proper office, being conclusive of the time of completion thereof, but he being personally liable to anyone injured by any false statement therein . . . *In case the real estate benefited by the improvement is sold before the municipal claim is filed, the date of completion in said certificate shall determine the liability for the payment of the claim as between buyer and seller, unless otherwise agreed upon or as above set forth. . . .*" (Italics supplied.) 53 PS §7143.

This act was applied to a set of circumstances similar to those confronting us in Moore v. Beattie, 5 D. & C. 2d 739. In that case, highway repaving began on July 8, 1953, finished December 3, 1953, and the certificate of

completion of the work issued on April 30, 1954. An agreement of sale was executed on September 8, 1953, providing for conveyance "free of encumbrances." Settlement was had on October 19, 1953. After settlement, plaintiff received an assessment later becoming a lien. The court after distinguishing cases, cited by plaintiff in the case at bar, decided prior to the Act of 1923 said:

"It appears, therefore, that the provisions of the statute quoted above are in harmony with the prior decisions on the question. In each, it is the fact that the work had been completed prior to the conveyance which placed the responsibility on the seller. The statute makes one further provision for the purpose of clarity and that is that the date in the certificate shall be conclusive of the time of completion."

Plaintiff avers that the construction work "was completed on or about August 2, 1957," and therefore argues that "there was nothing to charge the buyer with notice of a possible claim or assessment." It is not clear what plaintiff means when it is averred that the work was "completed" on August 2d. Is this the date when the last shovelful of earth was thrown into an excavation or is it the date given in the certificate of completion called for in the act? It is true as plaintiff contends that it was the date of completion of the work that guided the courts in cases determined prior to the Act of 1923, but the date of completion under the act is the date in the certificate—not the date when the work may have been physically completed.

President Judge Shughart in Moore concluded:

"We conclude, therefore, that since the certificate of completion of the improvements was issued after both the contract of sale and the delivery of the deed, there was no encumbrance upon the land at the time of the transfer. Since there was no provision for the payment of the assessment under the statute liability falls upon

plaintiffs. They cannot recover from defendants in this action and defendants' objection in the nature of a demurrer must be sustained. An opportunity will be afforded plaintiffs to amend to state a cause of action, if they desire."

Plaintiff has not averred whether the city filed its claim and if it has, when. If no claim was filed prior to the sale, then the date of completion appearing in the certificate of the appropriate engineer or officer is determinative of liability for the payment of the claim in question. The plaintiff's complaint is therefore inadequate and may be amended. It is unnecessary under the circumstances to pass upon other preliminary objections made by defendants.

In the trespass action, plaintiff charges defendants with inducing her to purchase the premises by representing them as having sewerage and failing to reveal that the costs of the line had not been paid and to reveal the right of the city to file a lien. Further, that defendants "fraudulently failed to reveal" and "with the intention to deceive, defraud and injure the Plaintiff." The claims must be differentiated between "representing" the premises as having sewerage on the one hand and "failing to reveal" or "remaining silent" about the unpaid claim on the other hand.

The representation by defendants is on the basis of the advertisement inserted by a realtor in a local, presumably, newspaper. No specific lots are referred to, though plaintiff avers that it was ascertained that the lots advertised were in fact the ones purchased. Unquestionably, the advertisement represents that the lots had the benefit of "water and sewerage," but no inference can be made that such a statement implies that the costs of sewerage were paid.

"The essential elements required to sustain an action for deceit are that the representation was made as a statement of fact, which was untrue and known to be

untrue by the party making it, or made in ignorance and reckless disregard of its truth; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. . . . Or, as has been said, one who fraudulently makes a misrepresentation of fact, opinion, intention, or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation. . . . To summarize, the pattern of fraud is as follows: there must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as to proximate result. . . . It is imperative that all these essentials should appear in the evidence.": Sum. Pa. Jur. Torts. §313 (cases omitted).

The gist of an action for deceit is that the representation must be false: Jamestown Iron and Metal Co. v. Knofsky, 302 Pa. 483. The representation that the premises had sewerage was not false nor does plaintiff so aver. Plaintiff couples this representation by an agent with defendants' failure to reveal that the costs of sewerage were unpaid and of the city's right to file a lien. This brings into play another principle of law as to defendants' duty to reveal or not to remain silent under the circumstances.

It seems clear that the alleged conduct of the defendants does not amount to active concealment with purpose or design.

The Restatement, Torts in §550 provides:

"One party to a business transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject

to the same liability to the other as though he had stated the nonexistence of the matter which the other was thus prevented from discovering."

It cannot be said that defendants "intentionally" prevented the plaintiff from acquiring material information.

As to silence or nondisclosure without active concealment, the general principles are:

"As a general rule, mere silence does not constitute fraud where the facts are discoverable by the exercise of ordinary diligence, or where the means of information are as accessible to one party as to the other. . . . There must be something more than mere silence, or a mere failure to disclose known facts; there must be some occasion or some circumstances which imposes on one person the legal duty to speak, in order that another dealing with him may be placed on an equal footing. . . . In other words, where the parties to a contemplated transaction are dealing at arm's length, there being no confidential or trust relationship involved, there is no duty on the part of either of the parties to tell the other what he knows about the transaction, and, there being no obligation to speak, silence, unaccompanied by act of concealment or other deception, is, under ordinary circumstances, not a fraud.": Sum. Pa. Jur. Torts, §332 (cases omitted).

Confidential or trust relationships which have been held to create a duty by one party to tell the other what he knows about a transaction include: attorney and client, physician and patient, principal and agent, guardian and ward, trustee and cestui que trust, husband and wife, and betrothed couples. See Darlington's Appeal, 86 Pa. 512; Kline v. Kline, 57 Pa. 120, and Matthaei v. Pownall, 235 Pa. 460. Joint or co-adventurers in a business enterprise have been held as owing a duty to disclose material information. See Pocket Supplement to §551 in Restatement, Torts.

Neither counsel has cited a case to the effect that a confidential or trust relationship exists between the parties in this litigation. It may be said that generally neither vendor nor vendee in a sales transaction are under a duty to disclose material information in the absence of a positive misrepresentation or an act of concealment. We must revert to a principle earlier stated that "as a general rule, mere silence does not constitute fraud where the facts are discoverable by the exercise of ordinary diligence, or where the means of information are as accessible to one party as to the other."

Plaintiff apparently knew that a sewerage line had been laid and it is not clear why an inquiry in the appropriate office or offices of the city would not have revealed the open claim.

Whether plaintiff relies on the advertisement, on the silence of the defendants, or a combination of both, it is our conclusion that defendants' conduct does not amount to actionable fraud.

We believe that plaintiff has stated her best case in the trespass action and we will accordingly for the foregoing reasons sustain the demurrer. In view of this action, it is not necessary to consider other preliminary objections.

Plaintiff eloquently argues that defendants' conduct was highly improper and defendants resent the implication of fraud. Whether defendants acted with design, ignorance of the law or with naiveté, we cannot know, but it is regrettable that the liability for the sewerage assessment was not made the subject of specific provision in the agreement of sale.

### ORDERS OF COURT

And now, October 27, 1964, defendants' preliminary objection in the nature of a demurrer (June term, 1964, 279) is sustained and the complaints dismissed unless plaintiff shall amend, so as to state a cause of

72

action in accordance with this opinion, within 20 days after service of this order upon her counsel.

And now, October 27, 1964, defendants' preliminary objection in the nature of a demurrer (June term, 1964, 280) is sustained and the complaint dismissed for the reasons appearing in the opinion rendered this day and filed in June term, 1964, 279.